714 So.2d 1113 (1998)
Abdul GHANI, M.D.
v.
DEPARTMENT OF HEALTH, Appellee.
No. 97-1329.
District Court of Appeal of Florida, First District.
July 15, 1998.
Thomas M. Hoeler and Bruce D. Lamb of Shear, Newman, Hahn & Rosenkranz, P.A., Tampa, for Appellant.
Kathryn L. Kasprzak, Senior Attorney, Agency for Health Care Administration, Tallahassee, for Appellee.
*1114 ERVIN, Judge.
Appellant, Abdul Ghani, M.D., appeals a final order rendered by the Board of Medicine, placing Dr. Ghani on supervised probation and imposing a fine. Dr. Ghani contends the Board erred in finding that he deviated from the standard of care by failing to order an ambulance for his patient, when appellee, the Agency for Health Care Administration (AHCA), now the Department of Health, neither charged such violation in the administrative complaint nor proved it at the hearing; and in finding that he deviated from the standard of care by failing to perform a Thallium stress test within six weeks of the patient's discharge from the hospital.[1] We reverse, because AHCA did not charge Dr. Ghani with failure to order an ambulance, and there was no competent, substantial evidence showing that his failure to perform the Thallium stress test fell below the requisite standard of care.
Dr. Ghani is board-certified in internal medicine, has advanced training in endocrinology, and has no record of disciplinary violations. On April 8, 1993, one of Dr. Ghani's patients, a 72-year-old female, suffered a mild myocardial infarction, which resolved during her hospital stay from April 8 through April 13. Dr. Ghani's progress notes disclose that he intended to order a Thallium stress (treadmill) test following her discharge, but he forgot to do so.
On May 8, 1993, the patient's husband called Dr. Ghani and told him that his wife's pulse was racing, but reported no chest pains. Dr. Ghani testified that had she reported chest pains, he would have told the husband to call emergency number 911. Instead, he met both the patient and her husband at his office, where he had an EKG, IV digoxin, and verapamil capability, and a "crash cart" with a defibrillator. The EKG indicated supraventricular tachycardia, the least malignant arrhythmia, which is often tolerated by patients and can usually be corrected with IV digoxin and verapamil therapy in the physician's office, so long as there is no chest pain. If not broken within a reasonable period of time, however, supraventricular tachycardia can lead to serious heart problems. When, after the lapse of one hour and fifteen minutes, Dr. Ghani was unable to stop the arrhythmia, he directed the husband to drive his wife to the hospital, a distance of eight or nine miles, and fifteen minutes away. In reply to the husband's inquiry about the use of an ambulance, Dr. Ghani said that it would be quicker to drive there.
Based on these facts, the administrative law judge (ALJ) concluded that Dr. Ghani's attempts to break the arrhythmia by using IV digoxin and verapamil in his office were appropriate under the circumstances. Nevertheless, Dr. Ghani violated section 458.331, Florida Statutes (1993), by failing to practice medicine with the level of care, skill and treatment recognized as being acceptable by a prudent, similar physician. This finding was based upon (1) Dr. Ghani's failure to schedule a Thallium stress test after the patient's initial discharge from the hospital, and (2) his failure to order ambulance transport from his office to the hospital on May 8.[2] The ALJ recommended a two-year supervised probation, continuing medical education, and a $5,000 fine. The Board of Medicine approved and adopted the ALJ's findings of fact and conclusions of law, and imposed the recommended penalty.
We agree with appellant that AHCA did not charge Dr. Ghani in its administrative complaint with failure to arrange for ambulance transport. Instead, it principally alleged, in regard to the May 8 incident, that Dr. Ghani incorrectly attempted to treat the patient in his office, rather than order her to the hospital immediately:
15. Once Patient # 1 arrived at Respondent's office, Respondent hooked her up to a heart monitor and began injecting Patient # 1 with medications to try and lower her heart rate. When Respondent was unable to lower Patient # 1's heart *1115 rate, he elected to transport Patient # 1 to Dade City Hospital.

* * *
21. Respondent practiced medicine below the acceptable standard of care in that Respondent: failed to order an echocardiogram for Patient # 1 during her hospital admission of April 8, 1993; failed to order an appropriate cardiology consultation for Patient # 1 during her hospital admission of April 8, 1993; failed to order an appropriate rheumatology consultation for Patient # 1 during her hospital admission of April 8, 1993, in order to confirm a suspected diagnosis of polymyalgia rheumatica before initiating long-term steroid therapy; failed to perform a Thallium stress test on Patient # 1 following her hospital admission of April 8, 1993; and inappropriately attempted to treat Patient # 1's supraventricular tachycardia in his office on or about May 8, 1993, before transporting her to the hospital.

(Emphasis added.) In paragraph 15 of the complaint, AHCA did not refer to Dr. Ghani's decision to send the patient to the hospital in her husband's car, rather than by ambulance; instead, it simply asserted that "he elected to transport her" to the hospital once his treatment failed. Similarly, in paragraph 21, AHCA only charged Dr. Ghani with attempting to treat the patient at his office "before transporting her" to the hospital, again making no statement regarding a problem with the means of transportation. Although, as the agency argues in its answer brief, the private-transport decision could be broadly characterized as one of the purportedly substandard decisions that Dr. Ghani made during the course of his office treatment, the plain language of the complaint addresses only his initial decision to care for her at his office. Cf. Sternberg v. Department of Professional Regulation, Bd. of Med. Exam'rs, 465 So.2d 1324 (Fla. 1st DCA 1985). Because we reverse as to this issue, we need not determine whether there was sufficient evidence to support the finding that the decision not to order ambulance transport fell below the standard of care.
In addition, there was no evidence from which the ALJ could have concluded that Dr. Ghani's failure to schedule a Thallium stress test for the patient deviated from the standard of care. Dr. Eric Fernandez, an internist and AHCA's only expert, testified that such test should have been performed within six weeks after the patient was discharged from the hospital. The ALJ accordingly found that the test needed to be performed within six weeks. The patient was discharged April 13, thus leaving until May 25 to conduct the test. The patient, however, suffered her May 8 cardiac crisis just three and a half weeks following discharge, and subsequently received a cardiac catheterization at the hospital, obviating the need for a Thallium test, because, as the evidence discloses, the former is a more certain test, whereas the latter is more general.
Dr. Fernandez repeatedly denied that Dr. Ghani's failure to schedule the test by the time of the May 8 hospitalization did not comply with the requisite standard of care. He testified that failure to follow up on tests that are indicated is a common problem for physicians, and that while the test could have been performed within one month following discharge, an additional two weeks should be allowed to cover the possibility of administrative oversight. Administrative oversight is precisely what occurred in this case.
Although Dr. Ghani admitted that he had forgotten about the test, his office notes indicate that he may have scheduled an appointment with the patient for mid-May, which did not occur because she had already been hospitalized on May 8. Thus, the evidence leads to the reasonable conclusion that in the absence of hospitalization, Dr. Ghani might have remembered the test during the patient's appointment, or at some other time before May 25. In any event, because Dr. Fernandez asserted that Dr. Ghani did not deviate from the standard of care, the ALJ had no evidence from which to conclude that Dr. Ghani was required to schedule either an appointment or the test by May 8.
REVERSED and REMANDED with directions to the Board of Medicine to dismiss the complaint against Dr. Ghani.
*1116 VAN NORTWICK, J., concurs.
BOOTH, J., dissents.
NOTES
[1] Because we reverse on these issues, we do not reach an additional issue that Dr. Ghani raised on appeal.
[2] The ALJ exonerated Dr. Ghani from all charges not addressed in this opinion.