BENTON, J.
The Department of Health, the Board of Medicine, the Board of Osteopathic Medicine and the Agency for Health Care Administration (the State) appeal a final judgment granting permanent injunction. The injunction reflects the circuit court’s view that, however applied, the Parental Notice of Abortion Act, section 390.01115, Florida Statutes (1999) (the Act), violates the Right to Privacy secured by the Florida Constitution. See Art. I, § 23, Fla. Const. While we do not question the premise that “freedom of choice concerning abortion extends to minors,” In re T.W., 551 So.2d 1186, 1193 (Fla.1989), we conclude that the Act’s requirement that a reasonable effort be made to inform at least one parent or legal guardian that a minor child will undergo surgical procedures to terminate a pregnancy does not render the Act unconstitutional on its face. Accordingly, we reverse.
I.
The Act provides that a physician must, in most circumstances, notify a parent or legal guardian at least forty-eight hours before terminating a minor’s pregnancy.
*257 (a) A termination of pregnancy may not be performed or induced upon a minor unless the physician performing or inducing the termination of pregnancy has given at least 48 hours’ actual notice to one parent or to the legal guardian of the pregnant minor of his or her intention to perform or induce the termination of pregnancy. The notice may be given by a referring physician. The physician who performs the termination of pregnancy must receive the written statement of the referring physician certifying that the referring physician has given notice. If actual notice is not possible after a reasonable effort has been made, the physician or his or her agent must give 48 hours’ constructive notice.
(b) Notice is not required if:
1. A medical emergency exists and there is insufficient time for the attending physician to comply with the notification requirements. If a medical emergency exists, the physician may proceed but must document reasons for the medical necessity in the patient’s medical records;
2. Notice is waived in writing by the person who is entitled to notice;
3. Notice is waived by the minor who is or has been married or has had the disability of nonage removed under s. 743.015 or a similar statute of another state;
4. Notice is waived by the patient because the patient has a minor child dependent on her; or
5. Notice is waived under subsection (4).
§ 390.01115(3), Fla. Stat. (1999). Subsection 4 of the Act creates an expedited judicial bypass procedure under which notice to a parent or guardian may be dispensed with in specified circumstances:
(a) A minor may petition any circuit court for a waiver of the notice requirements of subsection (3) and may participate in proceedings on her own behalf. The petition must include a statement that the petitioner is pregnant and notice has not been waived. The court may appoint a guardian ad litem for her. A guardian ad litem appointed under this subsection shall act to maintain the confidentiality of the proceedings. The circuit court shall advise the minor that she has a right to court-appointed counsel and shall provide her with counsel upon her request.
(b) Court proceedings under this subsection must be given precedence over other pending matters to the extent necessary to ensure that the court reaches a decision promptly. The court shall rule, and issue written findings of fact and conclusions of law, within 48 hours after the petition is filed, except that the 48-hour limitation may be extended at the request of the minor. If the court fails to rule within the 48-hour period and an extension has not been requested, the petition is granted, and the notice requirement is waived.
(c) If the court finds, by clear evidence, that the minor is sufficiently mature to decide whether to terminate her pregnancy, the court shall issue an order authorizing the minor to consent to the performance or inducement of a termination of pregnancy without the notification of a parent or guardian. If the court does not make the finding specified in this paragraph or paragraph (d), it must dismiss the petition.
(d) If the court finds, by clear evidence, that there is evidence of child abuse or sexual abuse of the petitioner by one or both of her parents or her guardian, or that the notification of a parent or guardian is not in the best interest of the petitioner, the court shall *258 issue an order authorizing the minor to consent to the performance or inducement of a termination of pregnancy without the notification of a parent or guardian. If the court does not make the finding specified in this paragraph or paragraph (c), it must dismiss the petition.
(e) A court that conducts proceedings under this section shall provide for a written transcript of all testimony and proceedings and issue written and specific factual findings and legal conclusions supporting its decision and shall order that a confidential record of the evidence and the judge’s findings and conclusions be maintained. At the hearing, the court shall hear evidence relating to the emotional development, maturity, intellect, and understanding of the minor.
(f) An expedited confidential appeal shall be available, as the Supreme Court provides by rule, to any minor to whom the circuit court denies a waiver of notice. An order authorizing a termination of pregnancy without notice is not subject to appeal.
(g) No filing fees or court costs shall be required of any pregnant minor who petitions a court for a waiver of parental notification under this subsection at either the trial or the appellate level.
(h) No county shall be obligated to pay the salaries, costs, or expenses of any counsel appointed by the court under this subsection.
§ 390.01115(4), Fla.Stat. (1999). The Act was signed into law on June 11,1999. But for the present litigation, the Act would have been in effect since July 1, 1999. See Ch. 99-822, § 3, at 3422, Laws of Fla. See also Amendments to the Fla. Rules of Civil Procedure, 756 So.2d 27, 27 (Fla.1999).
II.
Seeking to enjoin enforcement of the Act, physicians who perform abortions, clinics providing abortion services, and women’s rights organizations with minor female members filed a complaint (since amended) in circuit court even before the Act was slated to take effect. The plaintiffs also sought a declaratory judgment that the Act was unconstitutional because it violated pregnant minors’ constitutional rights to privacy, of equal protection, and of due process, and because it violated abortion providers’ due process rights. After a hearing, the circuit court granted the plaintiffs’ motion for a temporary injunction on July 27, 1999. The temporary injunction remained in place until the permanent injunction now before us superseded it.
The State appealed first the temporary, then the permanent, injunction. During the pendency of the appeal of the temporary injunction, we relinquished jurisdiction, once the trial on the merits had concluded, so the circuit court could enter final judgment. See generally Fla.R.App.P. 9.130(f). On May 12, 2000, entry of the final judgment granting permanent injunction mooted the State’s then pending appeal of the temporary injunction. In the final judgment granting permanent injunction, which we now have for review, the circuit court concluded that, while the Act did not violate equal protection or due process guarantees, state or federal, it did impermissibly infringe on the Right to Privacy guaranteed by the Florida Constitution. See Art. I, § 23, Fla. Const.
III.
Ordinarily only a person or family whose privacy rights are infringed or threatened has standing to assert the rights. See Sieniarecki v. State, 756 So.2d 68, 76 (Fla.2000). But a “recognized ex *259 ception to [the rule against parties asserting the privacy rights of others] applies where enforcement of a challenged restriction would adversely affect the rights of non-parties, and there is no effective avenue for them to preserve their rights themselves.” Sieniarecki, 756 So.2d at 76 n. 3. See Eisenstadt v. Baird, 405 U.S. 438, 446, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (assigning as a reason for considering third parties’ rights the fact that the third parties were “denied a forum in which to assert their own rights”).
Pregnant minors could, in theory, challenge the constitutionality of the Act. But experience has taught that they cannot count on being able to litigate the question to a final resolution. Compare In re T.W., 551 So.2d at 1189-90 (addressing the constitutionality of the parental consent act despite the fact that the minor raising the claim had already obtained an abortion), with State, Dep’t of Health and Rehabilitative Servs. v. Alice P., 367 So.2d 1045, 1048-49, 1053 (Fla. 1st DCA 1979) (holding administrative rule challenge moot after petitioners obtained abortions). A minor seeking an abortion has, as a practical matter, no assurance of being able to litigate fully a challenge to the Act’s constitutionality.
“The concept of vicarious standing has been applied specifically in the right of privacy area to permit a party to assert the constitutional rights of another.” State v. Long, 544 So.2d 219, 221 (Fla. 2d DCA 1989), affirmed sub. nom, Stall v. State, 570 So.2d 257 (Fla.1990), cert. denied, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1054 (1991); see also Jones v. State, 640 So.2d 1084, 1085 (Fla.1994). No plaintiff seeks damages here. The relief for which the complaint prays is injunctive and declaratory only.
Physicians especially have been granted standing to invoke rights of privacy on behalf of their patients. See, e.g., Griswold v. Connecticut, 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The rule barring third parties from asserting privacy rights is relaxed in part because of the nature of the physician-patient relationship. See Eisenstadt, 405 U.S. at 444-45, 92 S.Ct. 1029. In the present case, moreover, plaintiffs maintain that the Act compels physicians to violate patient-physician confidentiality by requiring them to notify a parent or guardian when a minor intends to have an abortion.
Physicians’ own interests are at stake here, too. They are subject to discipline if they violate the notice provisions of the Act. See §§ 390.01115(3)(c), 458.331(l)(z), Fla. Stat. (1999); see also Sieniarecki, 756 So.2d at 76 n. 3 (noting the propriety of asserting privacy rights of third parties when “it is the petitioners who ‘stand to lose from the outcome of this case and yet they have no other effective avenue for preserving their rights’ than by raising the constitutional rights of non-parties”); Jones v. State, 619 So.2d 418, 419 (Fla. 5th DCA 1993), affirmed, 640 So.2d 1084 (Fla.1994). Only physicians, indeed, are subject to any penalty under the Act. A physician who violates the terms of the Act faces possible loss of his or her license to practice medicine. See § 458.331(2), Fla. Stat. (1999); see also Jones, 640 So.2d at 1085.
Because the physicians who are plaintiffs here have standing to assert the rights of their minor patients, the circuit court properly reached the merits of the complaint that these physicians (albeit together with other plaintiffs) filed. “While [the State] questions] the standing of the [entire] coalition [of plaintiffs], we need not discuss that issue [further] because of the standing of the [physician] plaintiffs.” Coalition for Adequacy and Fairness in Sch. Funding v. Chiles, 680 So.2d 400, 403 n. 4 *260 (Fla.1996). At issue are minor patients’ privacy rights and concomitant equal protection and due process rights. We reject the state’s contention that none of the plaintiffs has standing to raise the rights of pregnant minors.
IV.
On the merits, “[i]n keeping with principles of federalism - enunciated by the Florida Supreme Court,” State v. Stanley, 754 So.2d 869, 872 (Fla. 1st DCA 2000), we first examine the challengers’ claims that the Act is repugnant to the Florida Constitution. See Traylor v. State, 596 So.2d 957, 962 (Fla.1992) (“When called upon to decide matters of fundamental rights, Florida’s state courts are bound under federalist principles to give primacy to our state Constitution.... ”); TA Operating Corp. v. State, Dep’t of Revenue, 767 So.2d 1270, 1277 (Fla. 1st DCA 2000); Hoggins v, State, 689 So.2d 383, 385 (Fla. 4th DCA 1997); Silver Rose Entertainment, Inc. v. Clay County, 646 So.2d 246, 249 (Fla. 1st DCA 1994).
A.
The Declaration of Rights provides that “[e]very natural person has the right to be let alone and free from governmental intrusion into the person’s private life.... ” Art. I, § 23, Fla. Const. The Florida constitutional Right to Privacy has been construed more broadly than any right to privacy guaranteed under the federal constitution. See Saul v. Brunetti, 753 So.2d 26, 28 (Fla.2000) (holding father’s right to privacy trumped any rights dead mother’s parents might have to visit their grandchild); Krischer v. McIver, 697 So.2d 97, 100 (Fla.1997) (holding right of privacy did not render statute outlawing assisted suicide unconstitutional); Winfield v. Division of Pari-Mutuel Wagering, 477 So.2d 544, 547-48 (Fla.1985) (“The right of privacy is a fundamental right which we believe demands the compelling state interest standard. This test shifts the burden of proof to the state to justify an intrusion on privacy.”).
1.
Our supreme court has specifically held that the Right to Privacy is implicated when the Legislature imposes restrictions on the ability, even of minors, to obtain abortions. See In re T.W., 551 So.2d at 1192-93.[1] At issue in the T.W. case was *261 whether a statute could require parental consent as a precondition to a minor’s obtaining medical assistance with an abortion. The court held that, because the parental consent statute impinged upon minors’ privacy rights, the “state must prove that the statute furthers a compelling state interest through the least intrusive means,” In re T.W., 551 So.2d at 1193, and that the statutory provision purporting to impose the consent requirement was unconstitutional for failure to vindicate a compelling state interest by the least intrusive means.
The plurality opinion in In re T.W. (as well as Chief Justice Ehrlich) concluded that, because the right to privacy under the Florida Constitution applied to “[e]very natural person,” Art. I, § 28, Fla. Const., minors also enjoy rights to privacy under the Florida Constitution. See 551 So.2d at 1193, 551 So.2d at 1197 (Ehrlich, C.J., concurring specially). The plurality opinion also concluded, however, that, as to minors, “society has recognized additional state interests-protection of the immature minor and preservation of the family unit.” 551 So.2d. at 1194; see 551 So.2d at 1198-99 (Ehrlich, C.J., concurring specially). The plurality opinion made clear that minors’ rights to privacy, while including “freedom of choice concerning abortion,” were not coextensive with adults’ rights to privacy and “that a minor’s rights are not absolute.” In re T.W., 551 So.2d at 1193.
2.
By requiring that a minor’s parent or guardian be notified that she intends to undergo an abortion, the Act plainly interferes with “the right to be let alone and free from governmental intrusion into the person’s private life.” Art. I, § 23, Fla. Const. In order to withstand a constitutional challenge, therefore, the Act must serve a compelling state interest and do so by the least intrusive means practicable. See, e.g., Shaktman v. State, 553 So.2d 148, 151-52 (Fla.1989); Winfield, 477 So.2d at 547. It is the State’s burden to show that a compelling state interest exists. See Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1033-34 (Fla.1999); State v. Presidential Women’s Ctr., 707 So.2d 1145, 1149 (Fla. 4th DCA 1998) (“The State is going to have to recognize, on remand, that it has the burden of demonstrating that legislation infringing *262 on the right to privacy serves a compelling state interest and does so through the least intrusive means.”).
In a statement of legislative purpose, the Legislature has asserted that several state interests served by the Act are “important and compelling”:
[ T]he Legislature’s purpose in enacting parental notice legislation is to further the important and compelling state interests of protecting minors against their own immaturity, fostering family unity and preserving the family as a viable social unit, protecting the constitutional rights of parents to rear children who are members of their household, and reducing teenage pregnancy and unnecessary abortion ...
... [F]urther legislative purposes are to ensure that parents are able to meet their high duty to seek out and follow medical advice pertaining to their children, stay apprised of the medical needs and physical condition of their children, and recognize complications that might arise following medical procedures or services, to preserve the right of parents to pursue a civil action on behalf of their child before expiration of the statute of limitations period, if a facility or physician commits medical malpractice that results in injury to a child, and to prevent, detect, and prosecute batteries, rapes, and other crimes committed upon minors ...
Ch. 99-322, at 3419, Laws of Fla. This statement of legislative purpose does not, however, “obviate the need for judicial scrutiny.” State Employees Attorneys Guild, 734 So.2d at 1034.
Appellees argue persuasively that many of these asserted interests ought not be deemed compelling under the rationale of In re T.W. or otherwise, and that the Act does not vindicate all these asserted interests by the least intrusive means. But if the State has established that even one of these interests is a compelling state interest and that the Act furthers that interest by means that are no more intrusive than necessary, no court has authority to strike down the Act as facially violating article I, section 23 of the Florida Constitution.
3.
At least one such interest has been established here. By facilitating the ability of parents and guardians to fulfill their duty to provide appropriate medical care for their daughters or wards, the Act serves a compelling state interest. Parents are legally responsible for their minor children’s health insofar as it is in their power to foster it. They have a duty to stay alert to their minor children’s medical needs, and to secure appropriate medical assistance if they are able to do so. See § 827.03(3)(a)l., Fla.Stat. (1999) (defining neglect as including the failure to provide necessary medicine and medical services); see also Finn v. Finn, 312 So.2d 726, 730 (Fla.1975) (“[A] parent has the obligation to nurture, support, educate, and protect his minor children and the child has the right to call on him for the discharge of this duty.”).
When the disabilities of nonage disappear, of course, these paternalistic responsibilities disappear along with them. But until a child is emancipated, she depends on her parent(s) or guardian, legally if not always as a practical matter, to arrange for her healthcare, including medical treatment necessitated by post-abortion complications.
The State proved that appropriate aftercare is critical in avoiding or responding to post-abortion complications. Abortion is ordinarily an invasive surgical procedure[2] *263 attended by many of the risks accompanying surgical procedures generally. If post-abortion nausea, tenderness, swelling, bleeding, or cramping persists or suddenly worsens, a minor (like an adult) may need medical attention. A guardian unaware that her ward or a parent unaware that his minor daughter has undergone an abortion will be at a serious disadvantage in caring for her if complications develop.
An adult who has been kept in the dark cannot, moreover, assist the minor in following the abortion provider’s instructions for post-surgical care. Failure to follow such instructions can increase the risk of complications. As the plaintiffs’ medical experts conceded, the risks are significant in the best of circumstances. While abortion is less risky than some surgical procedures, abortion complications can result in serious injury, infertility, and even death.
4.
An important step in gauging whether an interest should be deemed compelling is ascertaining whether the Legislature has acted consistently in protecting the interest. Specifically with respect to the State’s “interest in protecting minors,” In re T.W., 551 So.2d at 1195, our supreme court has said that a “ ‘selective approach employed by the legislature evidences the limited nature of the ... interest being furthered....’” Id. (quoting Ivey v. Bacardi Imports Co., 541 So.2d 1129, 1139 (Fla.1989)).
In general, before a minor child can obtain medical treatment — unless an emergency renders obtaining consent impractical — her parent or guardian must consent to the treatment. See §§ 743.064(2), 743.0645(2), Fla.Stat. (1999). This legislatively mandated requirement naturally entails notice to the parent or guardian. Such notice serves the same general purpose and vindicates the same general interest in facilitating adult assistance in managing medical problems as the Act does, with respect to medical problems related to abortions.
The Legislature has made exceptions, both for other pregnancy-related treatment, see § 743.065(1), Fla.Stat. (1999), and for treatment for sexually transmitted diseases, see § 384.30(1), Fla.Stat. (1999), to the general rule that a parent or guardian must consent to (and therefore have notice of) a minor child’s medical treatment. And it has done so without substituting a parental notification requirement. But we reject the contention that these statutes evince a legislative discounting of the importance of adult assistance in managing minors’ post-surgical care. There are obvious and important differences between sexually transmitted diseases, pregnancies that go to term, and abortions. These differences logically account for the differential statutory treatment.
a.
Sexually transmitted diseases are by definition contagious. See § 384.22, Fla. Stat. (1999) (“The Legislature finds and declares that sexually transmissible diseases constitute a serious and sometimes fatal threat to the public ... health.... [T]he incidence of sexually transmissible diseases is rising at an alarming rate.... ”). Rather than risk a (larger) epidemic, the Legislature has made a clearly rational decision to minimize barriers to treatment for sexually transmissible diseases. Not requiring minors to notify their parents or guardians in order to obtain medical treatment for sexually transmissible diseases evinces a public policy which in no way undermines or discredits the state’s interest in trying to assure the adequacy of minors’ care while they are recovering from surgery, including abortions. Treatment for sexually transmissible diseases does not ordinarily involve surgery.
*264 b.
For parental notification purposes, the Legislature also has a legitimate basis for distinguishing between abortion and other pregnancy-related medical treatment. But see Planned Parenthood v. Farmer, 165 N.J. 609, 762 A.2d 620, 631-38 (2000). Absent abortion, pregnancy-related treatment includes general checkups as a matter of course, perhaps ultrasound studies or x-rays, but by no means always surgery. Such surgery[3] as is necessary commonly occurs at the time of birth. By then most minors’ pregnancies are likely to be known to a parent or guardian so that a formal, legal requirement to give notice would not meaningfully advance any state purpose.
B.
Legislative consistency is also the command made “by the Florida Constitution’s Equal Protection Clause[,] Article I, section 2, Florida Constitution.” Advisory Opinion to the Attorney General, 778 So.2d 888, 903 (Fla.2000) (Shaw, J., concurring in result). “It is well settled under ... Florida law that all similarly situated persons are equal under the law and must be treated alike.” St. Mary’s Hosp. v. Phillipe, 769 So.2d 961, 971 (Fla.2000). See Vildibill v. Johnson, 492 So.2d 1047, 1050 (Fla.1986).
“For a statutory classification to satisfy the equal protection clauses found in our organic documents, it must rest on some difference that bears a just and reasonable relation to the statute in respect to which the classification is proposed.” Rollins v. State, 354 So.2d 61, 63 (Fla.1978).
Department of Health and Rehabilitative Servs. v. Heffler, 382 So.2d 301, 301-02 (Fla.1980) (relying on article I, section 2 of the Florida Constitution). See also *265 Green v. State, 620 So.2d 188, 188 (Fla.1993) (holding that “equal protection under article I, section 2, of the Florida Constitution” required state-paid counsel for indigent, death-sentenced certiorari petitioners, regardless of what the federal constitution required).
The Legislature has required that a physician notify a minor’s parent or guardian before performing an abortion, but not before treating her for sexually transmissible diseases (which is unlikely to entail surgery), or before providing other medical treatment on account of her pregnancy (which is likely to entail surgery, if at all, only at term, after the minor’s pregnancy is apparent even to a casual observer). For purposes of decision, we assume the Florida Constitution requires strict scrutiny of this differential treatment. See Scavella v. School Bd. of Dade County, 363 So.2d 1095, 1097-98 (Fla.1978). But for the same reasons set out in the preceding section as to the Right to Privacy, we find no violation of article I, section 2 of the Florida Constitution.
C.
An essential feature of the Act is its provision for a judicial waiver of the requirement that a parent or guardian be notified. “Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government.” J.B. v. Florida Dep’t of Children & Family Servs., 768 So.2d 1060, 1063 (Fla.2000) (quoting Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991)). The individual right at issue here is “a woman’s right to control her body and her future,” Farmer, 762 A.2d at 631-32, a right she has even as an unemanci-pated minor. Due process requires, therefore, that the Act not “operate as a functional bar to a minor’s exercise of her constitutional right to make her own reproductive decisions.” Farmer, 762 A.2d at 634.
The Act allows distinctions on the basis of a minor’s maturity.[4] As the trial court observed, “maturity is a relative term. The older the minor the more difficult it is to justify interference with her right to freely choose.” Although the Act applies to all minors, it allows sufficiently mature minors to proceed without notification to parent or guardian. The judicial waiver or bypass procedure affords the minor an opportunity to prove that she is “sufficiently mature to decide whether to terminate her pregnancy.” § 390.01115(4)(c), Fla. Stat. (1999).
Judicial waiver is also authorized upon a finding “that the notification of a parent or guardian is not in the best interest of the petitioner.” § 390.01115(4)(d), Fla. Stat. (1999). In this facial challenge, we have no occasion — and no ability — to catalogue every possible scenario in which the best interest of a petitioner would mandate judicial waiver. Under In re T.W., however, judicial waiver is constitutionally required whenever notice would burden impermissibly the exercise of a minor’s freedom of choice. A fortiori, judicial waiver is required whenever a petitioner demonstrates that the freedom of choice the Florida Constitution guarantees her could not, as a practical matter, be exercised if a parent or guardian were given notification.
The Act envisions a judicial bypass hearing at which the minor, with the assistance of counsel, presents evidence ex parte in support of her request for a judi *266 cial waiver of parental notification. Plaintiffs contend that the Act is vague in requiring the minor to establish grounds for the waiver by clear evidence without defining the term “clear evidence.” § 390.01115(4)(c) & (d), Fla.Stat. (1999). But, even if the Legislature intended that a minor provide clear and convincing evidence in order to establish grounds for a judicial waiver, see Senate Staff Analysis and Economic Impact Statement, S.B. 1598, at 6 (Apr. 6, 1999) (“A circuit court may waive the notice requirement if it finds, using a clear and convincing evidence standard” grounds for excusing notice), such a standard would not render the Act unconstitutional. Since the Act cannot be read to impose a standard more onerous than clear and convincing evidence, vagueness about the magnitude of the petitioner’s burden cannot work to the petitioner’s disadvantage. See generally Lambert v. Wicklund, 520 U.S. 292, 294, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997); Ohio v. Akron Ctr. for Reproductive Health, 497 U.S. 502, 515-16, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990). The Act does not offend due process by requiring the minor to present “clear evidence,” which amounts at most to evidence “the sum total of [which] must be of sufficient weight to convince the trier of fact without hesitancy.” In re Davey, 645 So.2d 398, 404 (Fla.1994).
D.
Certain procedural protections which the Act incorporates into the judicial bypass process are essential to the Act’s passing muster under In re T.W. “Procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue. Procedural due process under the Florida Constitution guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights.” J.B, 768 So.2d at 1063, 1064 (quoting Department of Law Enforcement, 588 So.2d at 960).
Our supreme court concluded that the parental consent act was unconstitutional at least in part because it did not provide for counsel at or for a record of the judicial bypass hearings. See In re T.W., 551 Soüd at 1195-96. Here, in contrast, the Act requires that the “circuit court shall advise the minor that she has a right to court-appointed counsel and shall provide her with counsel upon her request,” § 390.01115(4)(a), Fla.Stat. (1999), and specifically requires the circuit court to conduct the parental notice waiver hearing on the record:
A court that conducts proceedings under this section shall provide for a written transcript of all testimony and proceedings and issue written and specific factual findings and legal conclusions supporting its decision and shall order that a confidential record of the evidence and the judge’s findings and conclusions be maintained.
§ 390.01115(4)(e), Fla.Stat. (1999); see also Fla.R.Civ.P. 1.840(h) (“As provided by section 390.01115(4)(e), Florida Statutes, a court that conducts proceedings under the statute shall: (1) provide for a written transcript of all testimony and proceedings; ... and (3) order that a confidential record of the evidence and the judge’s findings and conclusions be maintained.”).
Under the Act, and the rule of civil procedure that implements the Act, the trial court must “provide for a written transcript.” A record is necessary to preserve the minor’s right to appeal in the event the circuit court denies her petition for waiver of notice. § 390.01115(4)(f), Fla. Stat. (1999). The Act also provides:
*267 No filing fees or court costs shall be required of any pregnant minor who petitions a court for a waiver of parental notification under this subsection at either the trial or the appellate level.
§ 390.01115(4)(g), Fla.Stat. (1999). Plaintiffs contend that this language does not go so far as to require furnishing a transcript without cost to a non-indigent minor who appeals denial of judicial waiver, and that lack of such a requirement renders the Act unconstitutional. We approve, however, of the State’s construction of the statute as requiring transcripts at no cost for non-indigent, as well as for indigent, waiver-denial appellants. See generally Perkins v. Florida State Univ., 303 So.2d 415, 416 (Fla. 1st DCA 1974).
The parties apparently agree that an indigent petitioner appealing denial of judicial waiver is entitled to an (expedited) transcript of the testimony at the waiver hearing at public expense. See § 57.081(1), Fla.Stat. (1999) (“Any indigent person who is a party or intervenor in any judicial or administrative agency proceeding or who initiates such proceeding shall receive the services of the courts, sheriffs, and clerks, with respect to such proceedings, without charge.”); Smith v. Department of Health and Rehabilitative Servs., 573 So.2d 320, 323 (Fla.1991) (holding that, because “the agencies must provide transcripts, ... as indigents the petitioners are entitled to receive them without charge” in contradistinction to appellants from trial court orders where the trial court is not charged with “providing] for a written transcript of all testimony.” § 390.01115(4)(e), Fla.Stat. (2000).).
“At least since the enactment of chapter 80-348, section 1, at 1446, Laws of Florida, ‘agencies must provide transcripts ... [to indigents taking administrative appeals] without charge.’ Smith v. Department of Health and Rehabilitative Services, 573 So.2d 320 (Fla.1991).” State, Dep’t of Health and Rehabilitative Servs. v. Southpointe Pharmacy, 636 So.2d 1377, 1382 (Fla. 1st DCA 1994) (brackets in original). Our supreme court reasoned:
If section 120.57(l)(b)(7) requires an agency to provide a. transcript in unemployment compensation cases, it is obvious that the agencies involved in the instant cases have the same obligation. While there is no statute comparable.to section 443.041(2)(a) which precludes these agencies from charging fees of any kind, the provisions of section 57.081 specify that an indigent person who is a party to an administrative agency proceeding “shall receive the services of the courts, sheriffs, and clerks, with respect to such proceedings, without charge.” § 57.081(1), Fla.Stat. (1985). Thus, the agencies must provide transcripts, and as indigents the petitioners are entitled to receive them without charge. While this results in a more complete state subsidization in indigents’ administrative appeals than in indigents’ appeals from trial court judgnients, this is a legislative matter with which we are not concerned.
Smith, 573 So.2d at 323. Unlike ordinary “appeals from trial court judgments,” appeals from denial of judicial waivers under section 390.01115(4), Florida Statutes (1999), require that the circuit court — like administrative agencies under section 120.57(l)(g), Florida Statutes (1999) — “provide for a written transcript of all testimony.” § 390.01115(4)(e), Fla.Stat. (1999). By analogy to Smith, transcripts required in appeals from waiver denials are also “court costs” which shall not “be required of any pregnant minor who petitions a court for a waiver of parental notification under this subsection at either the trial or the appellate level.” § 390.01115(4)(g), Fla. Stat. (1999). The statute forbids requiring the pregnant minor to pay for a transcript she needs to prosecute an appeal from an order denying a judicial waiver.
*268 Importantly, the Act and court rules unambiguously require prompt judicial action at both the trial and appellate levels, failing which the petition must be deemed granted by default. The Act provides for an expedited hearing within forty-eight hours after the minor files a petition:
The court shall rule, and issue' written findings of fact and conclusions of law, within 48 hours after the petition is filed, except that the 48-hour limitation may be extended at the request of the minor. If the court fails to rule within the 48-hour period and an extension has not been requested, the petition is granted, and the notice requirement is waived.
§ 890.01116(4)0»), Fla.Stat. (1999); see also Fla.R.Civ.P. 1.840(g). Even if the minor requests an extension-no other party can — the Act requires that waiver “proceedings ... must be given precedence over other pending matters to the éxtent necessary to ensure that the court reaches a decision promptly.”[5] § 390.01115(4)(b), Fla.Stat. (1999).
Whether or not the Act unconstitutionally encroaches on judicial prerogatives by purporting to dictate time standards in judicial proceedings, see Allen v. Butterworth, 756 So.2d 52, 59-60 (Fla.2000), our supreme court has adopted the forty-eight hour requirement by rule. Fla.R.Civ.P. 1.840(g). The supreme court has also provided by rule that, if an appeal from an order denying a petition for judicial waiver of parental notice of abortion is taken, “the district court of appeal shall render its decision on the appeal as expeditiously as possible and by no later than 10 days from the filing of the notice of appeal.” Fla. R.App.P. 9.110®.
V.
The plaintiffs contend that the Act runs afoul not only of the Florida Constitution but also of the United States Constitution. Comparable statutes enacted by other states have been assailed on various federal constitutional grounds, however, and, been upheld. Of statutes regulating minors’ abortions, including statutes like the Parental Notice of Abortion Act at issue here, the United States Supreme Court has said:
Those enactments, and our judgment that they are constitutional, are based on the quite reasonable assumption that minors will benefit from consultation with their parents and that children will often not realize that their parents have their best interests at heart. We cannot adopt a parallel assumption about adult women.
Planned Parenthood v. Casey, 505 U.S. 883, 895, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (holding state may not require notice to husband because a “State may not give to a man the kind of dominion over his -wife that parents exercise over their children”). See Lambert v. Wicklund, 520 U.S. 292, 293, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (upholding parental notice statute); Hodgson v. Minnesota, 497 U.S. 417, 423, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (same); Ohio v. Akron Ctr. for Reproductive Health, 497 U.S. 502, 511, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (concluding that “a bypass procedure that will suffice for a consent statute will suffice also for a notice statute”).
VI.
We reject plaintiffs’ contention that the Act is facially unconstitutional be *269 cause it violates the due process rights of physicians. Sections 458.331(l)(z) and 459.015(l)(dd), Florida Statutes (1999), which make a physician subject to discipline if the physician procures, or aids or abets in procuring, an unlawful abortion, do not purport to make physicians guarantors of their patients’ truthfulness. As used in these statutes, the words “procure” and “aid or abet” signify more than innocent participation in an unlawful abortion. Only if an abortion provider knew, or should have known, that the person seeking the abortion was a minor for whom notice had not been judicially waived or statutorily excused, can the provider be disciplined under the Act or the medical practice acts for performing the abortion. See generally, e.g., Ghani v. Department of Health, 714 So.2d 1113, 1115 (Fla. 1st DCA 1998).
Because disciplinary action is penal in nature, grounds for discipline must be established by clear and convincing evidence. See § 120.57(1)©, Fla.Stat. (1999); Nair v. Department of Bus. and Prof'l Regulation, 654 So.2d 205, 206-07 (Fla. 1st DCA 1995); see generally Dep’t of Banking and Fin. v. Osborne Stern and Co., 670 So.2d 932, 933-34 (Fla.1996); Ferris v. Turlington, 510 So.2d 292, 294 (Fla.1987). Physicians may be disciplined for “[gjross or repeated malpractice or the failure to practice medicine with that level of care, skill, and treatment which is recognized as being acceptable under similar conditions or circumstances,” §§ 458.331(l)(t), 459.015(l)(x), Fla.Stat. (1999), or for “[pjrocuring, or aiding or abetting in the procuring of, an unlawful termination of pregnancy.” §§ 458.331(l)(z), 459.015(l)(dd), Fla.Stat. (1999).
The Act does not, however, render physicians subject to discipline who make a good faith, objectively reasonable, effort to comply with the provisions of the Act. Under accepted principles, the Act must be construed as requiring scienter. Cf. Colautti v. Franklin, 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (“Because of the absence of a scienter requirement in the provision directing the physician to determine whether the fetus is or may be viable, the statute is little more than ‘a trap for those who act in good faith.’ United States v. Ragen, 314 U.S. 513, 524, 62 S.Ct. 374, 379, 86 L.Ed. 383 (1942).”); Women’s Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 206 (6th Cir.1997) (“Without a scienter requirement, the Act does not adequately notify a physician that certain conduct is prohibited; rather, a physician may be held criminally and civilly liable for adhering to his or her own best medical judgment.”); Planned Parenthood v. Miller, 63 F.3d 1452, 1465 (8th Cir.1995) (“[Wjithout a scienter requirement, this strict criminal-liability statute will have a ‘profound chilling effect on the willingness of physicians to perform abortions.’ It thus creates a substantial obstacle to a woman’s right to have a pre-viability abortion _” (citations omitted)).
' Reading the Act or the medical practice acts otherwise would raise serious constitutional questions. See Capital City Country Club, Inc. v. Tucker, 613 So.2d 448, 452 (Fla.1993) (“If it is reasonably possible to do so, we are obligated to interpret statutes in such a manner as to uphold their constitutionality.”); State v. Gale Distribs., 349 So.2d 150, 153 (Fla.1977) (“[The courts] ha[ve] a duty, if reasonably possible and consistent with constitutional rights, to resolve all doubts as to the validity of a statute, in favor of its constitutionality and to construe it so as not to conflict with the Constitution.”). A physician who acts reasonably does not become subject to discipline simply because a minor conceals facts or misleads the physician as to her age or some other pertinent fact.
*270 Finally, the plaintiffs complain that the Act does not define exactly what amounts to “reasonable efforts.” But regulations governing physicians (among others) are commonly couched in terms of reasonableness. See, e.g., §§ 458.331(l)(s), (l)(t), & (l)(v), Fla.Stat. (1999); see also § 743.0645(2), Fla.Stat. (1999) (“[T]he following persons ... may consent to the medical care or treatment of a minor ... when, after a reasonable attempt, a person who has the power to consent as otherwise provided by law cannot be contacted by the treatment provider....”). We are not persuaded that the statute is facially unconstitutional on this basis, either.
VII.
Properly construed, the Act is not facially unconstitutional. In facilitating parents’ and guardians’ involvement in caring for their immature minor daughters and wards as they recover from surgery, the Act serves a compelling state interest. To accomplish this purpose, the Act intrudes no more than minimally necessary on the privacy rights recognized by In re T.W., because the Act guarantees prompt judicial waiver in the circumstances described in section 390.01115(4), Florida Statutes (1999), by affording minors the assistance of counsel in a judicial bypass proceeding, which includes meaningful review of any denial of a petition for waiver. On its face, the Act does not violate equal protection guarantees or deprive minors or their physicians of due process of law.
Accordingly, we reverse the final judgment declaring the Act facially unconstitutional, and remand with directions that the permanent injunction be dissolved.
MINER and BROWNING, JJ., concur.

. Citing Justice Kogan's concurring opinion in Jones v. State, 640 So.2d 1084, 1091 (Fla.1994), the State asserts that In re T.W. is not binding precedent because four justices did not join any one opinion. Although In re T.W. occasioned five separate opinions, a majority concurred on almost all of the points set out in the plurality opinion. In a special concurrence, Chief Justice Ehrlich agreed for the most part with the analysis in the plurality opinion:
I wholeheartedly concur that Florida's express constitutional right of privacy, article I, section 23, Florida Constitution, is implicated in this case. Specifically, I note that the privacy provision was added to the Florida Constitution by amendment in 1980, well after the decision of the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). It can therefore be presumed that the public was aware that the right to an abortion was included under the federal constitutional right of privacy and would therefore certainly be covered by the Florida privacy amendment. See Jenkins v. State, 385 So.2d 1356 (Fla.1980). As expressed by the majority, it is also clear that the right of privacy extends to minors. See at 1192-1193.
It is therefore necessary for us to decide whether the state has a compelling interest sufficient to outweigh the minor girl's right of privacy, and if so, whether this statute is the least intrusive means of furthering that compelling interest. Winfield v. Division of Pari Mutuel Wagering, 477 So.2d 544 (Fla.1985). I agree that the state does not have a compelling interest sufficient to support the statute in this case, and even if the state’s interest were *261 compelling, I believe this statute is not the least intrusive means of furthering any such interest.
[[Image here]]
I recognize that in cases involving minors, the state has an additional interest in protecting the immature minor and the integrity of the family. I agree, however, that in light of section 743.065 the state’s interest in the parental consent statute is not compelling. Section 743.065 expressly grants to a pregnant, unwed minor the ability to consent, as though she were an adult, to medical services relating to pregnancy, except abortion, and to medical services for her child after birth. Decisions relating to the medical services covered under section 743.065 do not differ qualitatively from the decision to have an abortion. For example, under section 743.065, the pregnant minor girl may refuse to consent to medical treatment even though she is informed that without such treatment the fetus will not survive to term. At the heart of that situation, as with abortion, is a decision involving the life or death of the fetus. Yet under this statutory scheme, the minor girl is considered competent to make one decision but not the other. Given this statutory scheme, I must agree that the state has failed to prove that its interest in protecting the immature minor is compelling so as to outweigh the privacy rights of the minor girl.
In re T.W., 551 So.2d 1186, 1197, 1198-99 (Fla.1989) (Ehrlich, C.J., concurring specially) (footnotes omitted). The Chief Justice's concurring opinion tracked the plurality opinion except as to the definition of viability. See id. at 1198. As far as part III of the plurality opinion is concerned, Chief Justice Ehrlich’s reasoning is identical to the plurality opinion’s.

. See post n. 3.

. In circumstances where non-abortive surgery is necessary, moreover, the patient is more likely to have a substantial relationship with her treating physician. Absent emergency circumstances' — circumstances which would eliminate the requirement to notify a parent or guardian anyway — the surgeon is supposed to advise the minor fully of the nature of the procedure and attendant risks and receive informed consent before performing pregnancy — related surgery. This provides an opportunity to give advice specific to the patient about possible post-surgical complications, how to avoid them or minimize the risk of their occurrence, and what to do if they arise.
On the other hand, evidence at trial showed, the physician-patient relationship is often attenuated in the abortion context, almost to the point of non-existence. Cf. Planned Parenthood v. Danforth, 428 U.S. 52, 91, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) ("It seems unlikely that [the minor] will obtain adequate counsel and support from the attending physician at an abortion clinic, where abortions for pregnant minors frequently take place.”). Abortion patients ordinarily see their physicians only once or twice, very briefly. Most of their interaction is with the clinic’s staff. Physicians performing abortions often perform several in the space of a single hour.
On this challenge to the facial validity of the Act, we do not consider whether the Act can be constitutionally applied to non-surgical abortion procedures such as the recently approved abortion pill, RU 486. See Letter from the Center for Drug Evaluation and Research, Food and Drug Administration to Sandra P. Arnold, Vice President, Corporate Affairs, Population Council (Sept. 28, 2000) ("We have completed the review of this application, as amended, and have concluded that adequate information has been presented to approve ... mifepristone [RU 486] ... for use as recommended in the agreed upon labeling text. The application is approved under 21 CFR 314 Subpart H. Approval is effective on the date of this letter.”). The evidence presented below was limited to the risks associated with surgical abortions as practiced at the time of the hearing and did not address the risks associated with RU 486, which had not been approved at the time of hearing. It is not clear on this record when, if ever, RU 486 can be safely administered to minors, or when, if ever, it will be administered to minors in Florida.

. The availability of judicial waiver is crucial to our decision that the Act furthers by the least intrusive means the compelling state interest we have identified.

. The statute does not, as plaintiffs point out, set a time limit for conducting a hearing if an extension is granted. We reject the contention that this omission renders the Act facially unconstitutional. As the only party authorized to request an extension of time, the minor can wait until she is prepared for the waiver hearing to file her petition, in order to avail herself of the 48-hour deadline.